IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUSTIN T. SCOTT, } | |
|     Plaintiff, } | No.    4:09-CV-1989 |
| } | |
| v. } | Judge James F. McClure, Jr. |
| } | |
| LANCE MARSHALL, et al., } | |
|     Defendants. } | JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT MICHAEL
MADEIRA'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)**

**I.    RELEVANT FACTUAL BACKGROUND**

Plaintiff, Austin T. Scott, was the star running back for the Penn State University football team during the 2007 season. **Complaint ¶ 20**. He was a fifth-year senior at the University and was poised to enter the National Football League (NFL) draft after completing illustrious high school[1] and college[2] careers. **Id. at ¶ 45**. The above-named Defendants, including the now moving Defendant, Michael Madeira, stole the opportunity of this future from Austin Scott.

In the morning hours of October 5, 2007, Austin Scott and an acquaintance and fellow student, Defendant Desiree Minder, had consensual sex in his on campus apartment. Defendant Minder initiated the sex, and then controlled the sex from on top of Scott. **Id. at ¶ 23.** At one point, the encounter was interrupted as Austin got out of bed to retrieve a towel for Minder, then their consensual sexual activity resumed. **Id. at ¶ 24**.

---

[1] By way of background, and to place this matter in proper context, it should be noted that, Austin led Parkland High School (Allentown, Pa.) to its only ever PIAA Class AAAA state title, compiling several prestigious awards along the way, including the Jim Henry Award for High School Player of the Year as well as shattering numerous records, including the Pennsylvania High School records for rushing yards (3,863), touchdowns (53), and scoring (318 points), in a single season (senior year). He was also selected as an all-American by Parade Magazine.

[2] At the time of Mr. Scott's arrest, at the onset of his senior season, he had scored six (6) touchdowns through only four (4) games for the Nittany Lions.

Sometime after 4:17 a.m., Minder gave Austin a goodbye kiss and left his apartment. **Id. at ¶ 25**. Shortly thereafter, Minder began to falsely claim to her friends, and ultimately the Penn State University Police Department, that she had been "raped" by Austin. **Id.** *at* **¶ 26**.

Immediately upon learning that the alleged offender was a Penn State football player, the then District Attorney, Defendant Michael Madeira published the allegations and, spearheaded an "investigative team" aimed at investigating Minder's allegations, which included himself, his Assistant District Attorney, Defendant Lance Marshall, and members of the Penn State University Police Department. Defendant Madeira's instantaneous public reiteration regarding Scott's alleged perpetration of a rape resulted in Scott's termination from the Penn State Football Team only hours after Minder had made the claim. According to Penn State Police records, Madeira was present from the inception of the investigation. Madeira was actively participating alongside police officers in the infant stages of the investigation, including advising and directing the officers as to the legal and strategic planning of the investigation, long before any charges were levied or a prosecution begun.

Defendant Madeira's investigation, conducted in concert with the Penn State University Police Defendants, failed to corroborated any non-consensual sex. In fact, Minder's history of falsely accusing at least one other student athlete of rape, under details and circumstances incredibly similar to those now alleged in regard to Austin, was quickly uncovered.[3] **Id. at ¶ 27-8**. Mirroring her accusations in the previous case, Minder

---

[3] Defendant Minder falsely accused Christopher Burgan of rape while both were students at Moravian College in Bethlehem, Pennsylvania. Mr. Burgan was acquitted following a jury trial, and the remaining charges were nolle prossed by the Northampton County District Attorney's Office due to Minder's lack of credibility. The factual allegations in both cases are eerily similar. Furthermore, it has come to Plaintiff's

again said she was scared and "just went along with it," and claimed to have no memory of the act. **Id.** at ¶ 32. During numerous investigative interviews, Minder admitted that she never said "Stop", "Don't", "No", nor ever struggled, called for help, tried to get away, or screamed. **Id.** at ¶ 33. Examinations showed Minder suffered no bruising or injuries, nor was any of her clothing damaged. **Id.** at ¶ 31. She acknowledged controlling the sex with her on to of Austin.

Despite the lack of evidence and the striking similarity between the previous false rape accusations and the accusation against Austin, Defendant Madeira and his "investigative team" continued without hesitation. **Id.** at ¶ 28. Defendant Madeira, still functioning in a strictly investigative role alongside the police, arranged for a one-way consensual phone intercept between Minder and Austin. **Id.** at ¶ 29. This phone intercept, as well as other calls and text messages which Madeira and his "investigative team" reviewed, further evidenced that Defendant Minder had fabricated the story and no forcible sex had occurred. **Id.** at ¶ 34.

Nonetheless, a week later, in a highly publicized manner orchestrated by Madeira, Austin Scott was arrested and charged with numerous offenses including Rape, Sexual Assault, Indecent Assault, and Simple Assault. **Id.** at ¶ 35.

As previously stated, Defendant Madeira publicized the allegations against Austin within hours of hearing of them and, a full week before Madeira actually approved the filing of any criminal charges against Austin. These publications had their intended effect of having Austin immediately terminated from the football team.  **Id** at ¶ 437.

---

attention that there was a third incident where Defendant Minder falsely claimed that yet another young man raped her. This incident was alleged to have happened following Defendant Minder's senior high school prom.

From his arrest until his preliminary hearing, the Defendants, including Defendant Madeira, intentionally withheld from Austin and his legal counsel highly exculpatory evidence, including the prior rape accusation(s). **Id. at ¶38**. Only after months of having his name dragged through the mud, in front of the lenses of local and national media, and long after his ability to be reinstated on the football team had passed, did Austin learn of this evidence, not from the Defendants, but from a newspaper article. **Id. at ¶ 39**. When it became clear to Defendant Madeira, pursuant to a Court Order, that Austin would be able to introduce the evidence at trial which Madeira and other Defendants had been trying so hard to conceal from Austin, all charges against Plaintiff were dropped on April 18, 2008,[4] mere days before the NFL Draft and far too late for him to be seriously considered.[5] **Id. at ¶ 41**.

The Defendants had intended to and, succeeded in, destroying Mr. Scott's chances at a professional football career. More importantly, the stigma and humiliation from this matter will always be present. Mr. Scott went from a local celebrity with national credentials, to a pariah, overnight, and his reputation remains tarnished in the eyes of many, despite his complete vindication of the false allegations.

Subsequent to Austin's torment, Defendant Marshall, an Assistant District Attorney under Defendant Madeira's supervision – or more appropriately, lack of supervision – who specialized in prosecuting sexual abuse cases, was removed from his position for making inappropriate sexual advances toward women reporting sex crimes to

---

[4] The charges were only dropped following a last ditch effort by Defendant Madeira and Defendant Marshall of the Centre County District Attorney's Office to postpone the trial and to further maliciously punish Austin until after the 2008 Draft, by filing a frivolous appeal to the Superior Court. This appeal was quashed in a matter of 48 hours after the undersigned filed an emergency motion to quash with the Superior Court.

[5] The 2008 NFL Draft was held on April 26-27, 2008, in New York City.

his office. **Id.** at ¶ 42. Plaintiff believes and therefore alleges Defendant Marshall was motivated to pursue the unfounded charges against him in order to curry sexual or other favor with Defendant Minder (just as Marshall had done previously with other victims). **Id.** at ¶ 43. Furthermore, Plaintiff alleges Defendant Madeira had knowledge of Marshall's proclivities prior to Plaintiff's unlawful arrest and prosecution. For example, Defendant Madeira was aware of claims of inappropriate sexual harassment committed by Marshall toward female Correction Officers employed by the county, yet, failed to adequately supervise and/or discipline him. **Id.** at ¶ 44 Additionally, Madeira knew or, should have known, that Marshall had brought unwarranted investigations and prosecutions simply to impress and remain close to vulnerable females.

Furthermore, in the short time since the inception of this action, other individuals have come forward claiming similar mistreatment by Defendants Madeira and Marshall. It has become apparent that Defendant Madeira, through his administrative role as the director of his office, followed a policy of prosecuting any and all allegations of rape, regardless of the results, or lack thereof, which were uncovered in his pre-prosecutorial investigations. Madeira presided over a policy of charging all who were the subject of accusations and then sorting out the validity of those accusations during the prosecutorial stage, with complete disregard for the rights of numerous defendants, many of whom, like Austin, had charges dropped on the eve of trial. Furthermore, evidence has recently come to light indicating Defendant Madeira made decisions as to when to drop charges against obviously innocent parties based not upon the exercise of a quasi-judicial function but based upon political motivations, quite apart from his duties as an advocate for the Commonwealth.

## II. STANDARD OF REVIEW

The Supreme Court has held a Plaintiff's claim against a Defendant will not be dismissed based upon a 12(b)(6) motion when Plaintiff's allegations "raise a right to relief above the speculation level." **Bell Atlantic Co. v. Twombly, 550 U.S. 544 (2007).** In the course of this determination, the Supreme Court has ruled that all Plaintiffs' allegations are to be assumed as true, "even if doubtful in fact." **Id.**

In furtherance of **Twombly**, in **Ashcroft v. Iqbal, U.S., 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009)**, the Supreme Court explained, "…a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Iqbal, 129 S.Ct. at 1949** (citations omitted).

"It must also be remembered that when considering a motion to dismiss under Rule 12(b)(6), the important inquiry is not whether the plaintiff will ultimately prevail on the merits of his claims, but only whether he is entitled to offer evidence in support of them," **Arnold v. City of York, 2004 WL 2331781 (M.D. Pa.)**, citing **Scheuer v. Rhodes, 416 U.S. 233 (1974).**

In the context of a civil rights claim, the Court must also be cognizant of the imbalance between the amounts of information available to plaintiffs as opposed to governmental defendants:

> To withstand a 12(b)(6) motion, a plaintiff need only make out a claim upon which relief can be granted. If more facts are necessary to resolve of clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules. **Swierkiewicz, 534 U.S. at 512, 122 S.Ct. 992** ("This simplified notice

> pleading standard relies on liberal discovery rules… to define disputed facts and issues and to dispose of unmeritorious claims.").
>
> The need for discovery before testing a complaint for factual sufficiency is particularly acute for civil rights plaintiffs, who often face informational disadvantages. *See* **Colburn, 838 F. 2d at 667**.

**Alston v. Parker**, 363 F. 3d 299, fn.6 (3d Cir., 2004)

### III. QUESTION PRESENTED

DO PLAINTIFF'S ALLEGATIONS AND THE REASONABLE INFERENCES TO BE DRAWN THEREFROM, WHEN TAKEN AS TRUE, DEMONSTRATE THAT DEFENDANT MADEIRA MAY BE LIABLE TO PLAINTIFF FOR ACTIONS AND/OR INACTIONS NOT COVERED BY ABSOLUTE PROSECUTORIAL IMMUNITY?

SUGGESTED ANSWER: YES

### IV. ARGUMENT

The Supreme Court has held that a prosecutor is only *absolutely* immune from civil action for "prosecutorial actions that are 'intimately associated with the judicial phase of the criminal process.'" **Van de Kamp v. Goldstein, 129 S. Ct. 855, 860 (U.S. 2009)**, quoting **Imbler v. Pachtman, 424 U.S. 409 (U.S. 1976)**. Indeed, when a prosecutor is not acting as "an officer of the court," but is instead acting in an *administrative* or *investigative* capacity, only qualified immunity applies. **Burns v. Reed, 500 U.S. 478 (1991)**.[6] Affirming this exclusion for investigative and administrative tasks, Courts within the Third Circuit have held, "[t]he test for absolute prosecutorial immunity under § 1983 is whether based on the unique facts of the case, the conduct of the prosecutor was quasi judicial, and entitled to absolute immunity, or administrative or

---

[6] *See also*, **Bayer v. Monroe County Children and Youth Servs., 577 F.3d 186, 194 (3d Cir. Pa. 2009)**(Holding the same "unwilling[ness] to accord absolute immunity to 'investigative or administrative' actions*"* applies to child welfare workers as prosecutors because their functions are analogous); **Safeguard Mut. Ins. Co. v. Miller, 456 F. Supp. 682 (E.D. Pa. 1978)** (only good faith qualified immunity should apply to the investigative and administrative acts of the Defendant state attorneys general).

investigatory, and not so entitled." **Whitfield v. City of Philadelphia**, 587 F. Supp. 2d 657 (E.D. Pa. 2008).

Moreover, the Third Circuit Court of Appeals has ruled the "heavy burden" of establishing entitlement to absolute prosecutorial immunity falls upon the defendant prosecutor, not upon the plaintiff to prove otherwise. **Odd v. Malone, 538 F.3d 202, 207 (3d Cir. Pa. 2008)**. The Court must, "begin with the presumption that qualified rather than absolute immunity is appropriate." **Id. at 207-08**, citing **Carter v. City of Philadelphia, 181 F.3d 339, 355 (3d Cir. 1999)**. "To overcome this presumption, a prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question." **Id. at 208**. The inquiry into whether conduct is prosecutorial, and therefore subject to absolute immunity, or administrative or investigative, and therefore only afforded qualified immunity, "focuses on 'the nature of the function performed, not the identity of the actor who performed it.'" **Id.** In other words, simply holding the title of prosecutor does not automatically bring with it absolute immunity from civil suits. This inquiry "focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions" **Id. at 210**.

Obviously, this is a fact intensive inquiry which is not amenable to action, pre-discovery, in a motion to dismiss under Rule 12 (b) (6).  It should also be noted that while the Third Circuit "has rejected bright-line rules that would treat the timing of the prosecutor's action (*e.g.* pre-or post-indictment), or its location (*i.e.* in or out-of-court), as dispositive," "[the Courts] have found these considerations relevant, however, to the extent that they bear upon the nature of the function the prosecutor is performing." **Id.**

The instant motion now attempts to offhandedly evade liability with inapplicable and conclusionary statements such as, "[i]n so far as the Plaintiff is alleging that Defendant Madeira initiated a prosecution without probable cause, Defendant Madeira has absolute immunity", **Brief of Defendant District Attorney Michael Madeira In Support of Motion to Dismiss at 3**; "[o]nce again, any actions taken by Defendant District Attorney Madeira would have been taken within the scope of performing his official duties as District Attorney. Consequently, he has absolute immunity", **Id. at 6**. These assertions are nothing more than the ipse dixit of the author, are totally conclusionary, and do not accurately reflect the law. For example, as discussed *supra*, actions taken within the scope of performing official duties as a prosecutor may be investigative or administrative in nature, and therefore, unquestionably, would not enjoy absolute immunity. Indeed, the Supreme Court itself has declared, "Almost any action by a prosecutor…could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive." **Burns, 500 U.S. at 495**.

    *a.*    *Defendant Madeira's Administrative Acts Are Not Protected by Absolute Prosecutorial Immunity*

Again, administrative actions taken by a prosecutor, outside of their "quasi-judicial" role, are not covered by absolute immunity. *See*, **Imbler, 424 U.S. 409**, and its progeny, discussed *supra*. As this Honorable Court stated, in pertinent part, in **Basinger v. Wentz, 2009 U.S. Dist. LEXIS 51829 (M.D. Pa. 2009)**, "[s]tated somewhat differently, absolute immunity will attach to actions 'intimately associated with the judicial phases of litigation, but not to administrative…actions unrelated to initiating and

9

conducting judicial proceedings.'" **Id.,** citing **Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008)**, in turn citing, **Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994)**.

In **Basinger**, this Honorable Court held that a Plaintiff's allegation that prosecutors, "pursued' baseless charges against Plaintiff for over a year before the charges were brought", **Id. at 13-14**, without even explaining what actions were "undertaken during the alleged pursuit of allegedly baseless charges"… *provide[d]* **sufficient factual allegations** to show that [the] claim relate[d] to administrative or investigative acts rather than prosecution." **Id.** (emphasis added). Even more significantly, this Court, in **Basinger**, reaffirmed its early holding, and ruled, "… qualified -- rather than absolute -- immunity applied where it was not clear from the complaint 'whether the [alleged conduct] occurred during the preliminary investigation of an unsolved crime' or 'after the [prosecutors] decided to indict… and had begun working as the state's advocates." **Id.**, quoting, **Yarris v. Del. County, 2005 U.S. Dist. LEXIS 4131 (E.D. Pa., Feb. 25, 2005)**.

Here, as in **Basinger**, as well as in **Yarris**, Mr. Scott has alleged conduct in his Complaint that is administrative (and investigative) in nature, not prosecutorial. "The exact relationship and responsibilities between the Defendants *inter se*, cannot be ascertained pre-discovery except to allege with certainty that the… District Attorney acted in a supervisory capacity…" **Plt. Complaint ¶ 74**. In large part, Defendant Madeira's conduct as an administrator/supervisor of his office, not an advocate in a judicial/quasi-judicial setting, is clearly what Mr. Scott alleges in his Complaint.

As an example, it is alleged that Madeira, as the administrator of the District Attorney's Office, failed to supervise or otherwise allowed Defendant Lance Marshall to

work as an Assistant District Attorney below him, specifically on sexual abuse cases, despite knowledge of Marshall's proclivities and exploitation of his position to curry favor with, and be solicitors of, women who alleged the commission of sex crimes. As Mr. Scott alleges, it was this, as well as a wish to otherwise impress Desiree Minder, that motivated Defendant Marshall to pursue the unfounded charges against him.

Further, Defendant Madeira, again as leader and administrator of the District Attorney's Office, enacted a policy of filing rape charges every time such a crime was alleged, regardless of the adequacy and/or results of the initial investigation. In the same vein, it was also Defendant Madeira who enacted and supervised an ongoing policy of dragging out criminal proceedings until the very eve of trial, only then dismissing charges based on insufficiency of evidence.

When taken as true, all of these allegations fit squarely within the administrative exception to the absolute immunity a prosecutor may enjoy for actions "intimately associated with the judicial phases of litigation." Just as in **Basinger**, these allegations are "sufficient…to show that [the] claim relate[d] to administrative or investigative acts rather than prosecution." **Basinger, 2009 U.S. Dist. LEXIS 51829 at 13-14**. As such, only qualified immunity should apply. Should Defendant Madeira wish to argue otherwise, the burden of proving same rests upon him. **Odd v. Malone, 538 F.3d 202, 207 (3d Cir. Pa. 2008)** Regardless, at this early stage of litigation when Plaintiff's allegations are clearly sufficient on their face to show administrative conduct, Plaintiff respectfully requests that this Honorable Court deny Defendant Madeira's Motion to Dismiss based on absolute immunity, as such immunity does not attach in the face of such allegations.

### b. *Defendant Madeira's Investigative Acts Are Not Protected by Absolute Prosecutorial Immunity*

As with administrative acts, a long lineage of case law has held investigative acts, although taken by a prosecutor, do not fall within the purview of absolute prosecutorial immunity. *See*, **Imbler, 424 U.S. 409**, and its progeny, discussed *supra*. For example, Third Circuit District Courts have held, "Prosecutors do not benefit from absolute immunity for actions…that are investigative in nature prior to finding of probable cause to arrest*.*" **King v. Timmoney, 263 F. Supp. 2d 977 (E.D. Pa. 2003)**. Also significant because alleged here, "absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation." **Van de Kamp, 129 S. Ct. at 861**. As the Supreme Court explained in **Burns**, "it is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice. Ironically, it would mean that the police, who do not ordinarily hold law degrees, would be required to know the clearly established law, but prosecutors would not. **Burns v. Reed, 500 U.S. 478, 495 (U.S. 1991)**(citations omitted).

In the instant matter, it is clear Defendant Madeira acted with and along side the police in an investigative manner, as a member, if not the leader of the "investigative team."[7] Madeira's involvement occurred will prior to any probable cause determination, and before any prosecution had begun. According to Penn State University Police records, Madeira was there from the very inception, was participating alongside police

---

[7] Records indicate this "investigative team" consisted of Defendants Madeira, Marshall, Cover, Miller, Brooks, Vile, and Sowerby.

officers in the early stages of the investigation,[8] and was advising and directing the officers as to the legal and strategic planning of the investigation long before any charges were levied and before he began his prosecutorial function.[9] Significantly, Madeira's public pronouncements were the cause of Austin's termination from the Penn State Football Team a full week before the criminal charges were filed. The Supreme Court has held that the dissemination of any such information during any phase of the prosecution, much less the pre-complaint investigatory phase, is not part of any immunized function of a prosecutor. **Buckley v. Fitzsimmons, 509 U.S. 259 (1993).**

When taken as true, all of these related allegations in Austin Scott's Complaint fit squarely within the investigative exception to the absolute immunity a prosecutor may otherwise enjoy for other actions which are "intimately associated with the judicial phases of litigation." Just as in **Basinger**, these allegations are "sufficient…to show that [the] claim relate[d] to administrative or investigative acts rather than prosecution." **Basinger, 2009 U.S. Dist. LEXIS 51829 at 13-14**. As such, only qualified immunity could potentially apply. Should Defendant Madeira wish to argue otherwise, the burden of proof rests upon him; something which is not accomplished by mere contrary assertions in a 12(b) (6) motion where a plaintiff's allegations (and all reasonable inferences to be drawn therefrom) are taken as true. **Odd v. Malone, 538 F.3d 202, 207 (3d Cir. Pa. 2008)** Regardless, especially at this early stage of litigation, Plaintiff respectfully requests that this Honorable Court deny Defendant Madeira's Motion to

---

[8] e.g, Defendant Sowerby's police report indicates Defendant Madeira was at the police station as early as 0745 hours on the morning of October 5, 2007. In fact, he advised the police to halt the investigation until after he had an opportunity to met with Defendant Minder himself.

[9] e.g., Defendant Brooks' police report states that it was Defendant Madeira who arranged for, and had Defendant Minder complete paperwork for the consensual phone intercept early in the morning of October 5, 2007. It was the District Attorney Office's recorder which was retrieved and used for the wiretap.

Dismiss based upon his claim of absolute immunity, which cannot legally obtain in the face of the allegations appearing in Austin Scott's Complaint.

## V.     CONCLUSION

In sum, while Plaintiff agrees with Defendant Madeira's general statement that prosecutors enjoy absolute immunity for prosecutorial acts, this immunity is inapplicable to the instant case as the allegations against Defendant Madeira involve his actions in administrative and investigate actions readily distinguishable from any unclaimed quasi-judicial function.  A long history of precedential jurisprudence clearly states that such actions, even when taken by a prosecutor, are only afforded (if applicable) qualified immunity.  Moreover, the onus to prove otherwise rests squarely upon the Defendant.  When the allegations set forth by Mr. Scott against Defendant Madeira are taken as true, it is clear that such claims are actionable on their face.  Stated otherwise, because the averments in Plaintiff's Complaint allege that the conduct of Defendant Madeira was committed when he was acting in an administrative and/or investigative capacity and, because those allegations must be taken as true for Rule 12 (b) (6) purposes, Defendant Madeira's claim that he is entitled to absolute immunity must fail as a matter of law.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court deny Defendant Madeira's Motion to Dismiss Based Upon F.R.C.P. 12(b)(6).

|  |  |  |
|---|---|---|
|  |  | Respectfully submitted,<br>**KAROLY LAW OFFICES, P.C.** |
| Dated: December 17, 2009 | BY: | /s/ John P. Karoly, Jr., Esquire<br>John P. Karoly, Jr., Esquire<br>Attorney for Plaintiff<br>ID No. 22224<br>1555 N. 18th Street<br>Allentown, PA  18104<br>(610) 820-9790<br>(610) 820-9909 (facsimile) |

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AUSTIN T. SCOTT, } | | |
|     Plaintiff, } | No. | 4:09-CV-1989 |
| } | | |
| v. } | Judge James F. McClure, Jr. | |
| } | | |
| LANCE MARSHALL, et al., } | | |
|     Defendants. } | JURY TRIAL DEMANDED | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of **Plaintiff's Brief in Opposition to Defendant Michael Madeira's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)**, along with a Proposed Order, has been served upon the following counsel of record by electronic filing:

| | |
|---|---|
| **Gary L. Weber**<br>Mitchell Mitchell Gallagher Weber Southard & Wishard, P.C.<br>10 West Third Street<br>Williamsport , PA 17701<br>570-323-8404<br>glw@mmgwsw.com | **Joseph P. Green**<br>Lee Martin Green & Reiter, Inc.<br>115 East High Street<br>P.O. Box 179<br>Bellefonte , PA 16823<br>814-355-4769<br>Fax: 18143555024<br>clenhart@lmgrlaw.com |
| **David E. Heisler**<br>Lenahan & Dempsey, P.C.<br>116 N. Washington Avenue<br>Suite 400<br>Scranton , PA 18501-0234<br>570-346-2097<br>Fax: 3461174<br>deh@lenahandempsey.com | **James M. Horne**<br>McQuaide Blasko Law Offices<br>811 University Drive<br>State College , PA 16801<br>814-238-4926<br>Fax: 814-238-9624<br>jmhorne@mqblaw.com |

                                              Respectfully submitted,
                                              **KAROLY LAW OFFICES, P.C.**

Dated: December 17, 2009        BY:    /s/ John P. Karoly, Jr., Esquire
                                                              John P. Karoly, Jr., Esquire
                                                              Attorney for Plaintiff
                                                              ID No. 22224
                                                              1555 N. 18th Street
                                                              Allentown, PA  18104
                                                              (610) 820-9790
                                                             (610) 820-9909 (facsimile)